IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

DENISE HOLT,                    )
                               )
            Plaintiff,          )
                               )
       v.                       )   Case No. 07-0857-CV-W-REL
                               )
SCHWEIGER CONSTRUCTION          )
COMPANY,                        )
                               )
            Defendant.          )

## ORDER DENYING
## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the court is a motion for summary judgment on
defendant's counterclaims of negligence (counterclaim 1),
violation of the Lanham Act (counterclaim 3), and unfair
competition (counterclaim 4) filed by plaintiff (Doc. No. 95).
I find that there remain genuine issues of material fact.
Therefore, the motion for summary judgment will be denied.  I
further find that additional briefing is required on the issue of
whether defendant has a viable cause of action against plaintiff
for negligence.

## I.    BACKGROUND

On November 13, 2007, plaintiff filed a complaint against
the Schweiger Construction Company after being terminated from
her position as project manager and having her stock redeemed at
$3,644 per share without an accounting or the ability to verify
the fair market value of her stock.  On February 19, 2009,

defendant filed supplemental counterclaims for negligence, breach
of contract, violation of the Lanham Act, and unfair competition.

On March 13, 2009, plaintiff filed a Motion for Partial
Judgment (Doc. no. 95).  Defendant filed suggestions in
opposition on April 10, 2009 (Doc. No. 104).  On April 24, 2009,
plaintiff filed reply suggestions (Doc. No. 108).

## II.  STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure permits
summary judgment "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to judgment
as a matter of law."

The key to determining whether summary judgment is proper is
ascertaining whether a genuine issue of material fact exists.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A
genuine issue of material fact exists if: (1) there is a dispute
of fact; (2) the disputed fact is material to the outcome of the
case; and (3) the dispute is genuine, that is, a reasonable jury
could return a verdict for either party.  Am. Acad. of Family
Physicians v. United States, 75 A.F.T.R.2d 95-1709 (W.D. Mo.
1995), aff'd 91 F.3d 1155 (8th Cir. 1996).  The party moving for
summary judgment has the burden of proving that these

2

requirements for summary judgment have been met.  Adickes v. S.H.
Kress & Co., 398 U.S. 144, 157 (1970).

In a summary judgment analysis, a court must first consider
whether there are any issues of fact.  If the only issues are
issues of law, then summary judgment is appropriate.  Disesa v.
St. Louis Cmty. Coll., 79 F.3d 92, 94 (8th Cir. 1996).  If issues
of fact are raised, a court must consider whether these issues
are material to the outcome of the case.  Materiality is
identified by the substantive law that is to be applied.
Anderson, 477 U.S. at 248.  Factual disputes that are collateral
to the substantive law will not preclude summary judgment.  Id.

In addition to the requirement that a dispute of fact be
material, the dispute must also be genuine.  A dispute of fact is
considered genuine if the non-moving party has produced
sufficient evidence such that a reasonable jury could return a
verdict for that party.  Id. at 249.  When considering a motion
for summary judgment, the evidence of the non-movant is to be
believed, and all justifiable inferences are to be drawn in its
favor.  Id. at 255.  If the evidence submitted by the non-moving
party is merely colorable or is not significantly probative, then
summary judgment may be granted.  Id. at 249-50.

Where the party moving for summary judgment does not bear
the burden of proof at trial, that party must show "that there is
an absence of evidence to support the non-moving party's case."

3

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). This burden is met when the moving party identifies portions of the record demonstrating an absence of a genuine issue of material fact. <u>Id</u>. at 323. If the moving party meets the requirement, the burden shifts to the non-moving party who must set forth specific facts showing that there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 248. The trial judge then determines whether a trial is needed -- "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id</u>. at 250.

## III. UNCONTROVERTED FACTS

Below, typed in bold, are the facts offered by plaintiff that I find to be uncontroverted by the record before me.

**1.  Schweiger Construction Company ("SCC") is in the general construction contractor business and in the building construction business.  Its work includes designing and constructing buildings and other improvements, providing designer/builder services, and providing construction management services.**

**2.  Denise Holt was employed by SCC from September 18, 1995, until March 19, 2007.  Holt served as an Executive Vice President and owned 258 shares of SCC stock with full voting privileges.**

4

3.    Holt's employment duties included those of project manager, preparing marketing proposals, new business development, bid preparation, and personnel recruitment.

4.    Carol L. Meharry ("Meharry"), at all relevant times, served as the President and a member of the Board of Directors of SCC and owned 258 shares of SCC stock with full voting privileges.

5.    John W. Schweiger ("Schweiger"), at all relevant times, served as Vice President and a member of the Board of Directors for SCC and owned 258 shares of SCC stock with full voting privileges.

6.    Holt, SCC, Meharry, and Schweiger executed a contract titled Shareholder-Employee Agreement ("the Agreement") dated November 27, 2001, under which Holt, Meharry, and Schweiger became shareholders and full-time executive officers and employees of SCC.

7.    On March 19, 2007, a meeting of the Board of Directors of SCC was held at its office in Kansas City, Missouri.

8.    The meeting was held at the direction of Meharry and Schweiger over Holt's objection.  During the meeting, Holt's employment was terminated by a vote of two to one by the Board of Directors, with Meharry and Schweiger voting to terminate.

9    On November 13, 2007, Holt filed the present action for breach of contract (wrongful discharge), request for an accounting, and breach of duty of good faith and fair dealing.

10.  SCC filed its Answer and Counterclaim on January 22, 2008, alleging a counterclaim of negligence against Holt.  On October 2, 2008, SCC filed it motion for leave to file supplemental counterclaim, alleging additional counterclaims of breach of contract, violation of the Lanham Act, and unfair competition, which the court granted on January 20, 2009.  On February 20, 2009, SCC filed its supplemental counterclaim.

11.  In its Lanham Act counterclaim, SCC alleged that Holt has used false designations of origins, false or misleading descriptions of fact, or false or misleading representations of fact to cause confusion or mistake as to SCC's goods, services, or commercial activities and that Holt has falsely claimed that the commercial activities of SCC are the commercial activities of LINC.

12.  SCC alleged that Holt claims "that the customers, work product and community activities of Schweiger are those of Linc."

13.  SCC further alleged in its counterclaim that LINC operates as a general contractor, that it "touts Holt's expertise in construction management with testimonials from representatives of Schweiger's customers and clients," and that its website

6

"contains photographs of finished construction projects falsely represented to be completed by LINC."

14. The photographs on the LINC website depicted projects that were managed by Denise Holt.

15. SCC's counterclaim acknowledged that the photographs are subject to copyright by a photographer, but stated that it has a license from the photographer to use those materials.

16. Carol Meharry submitted a sworn statement that "SCC has a license to use those materials."

17. Denise Holt purchased the photographs contained on her website from the copyright owner of the photographs.

> In support of this proposed fact, plaintiff cites to her testimony during the TRO hearing wherein she stated under oath that she bought the photographs.

> Defendant controverts this fact in part, pointing to evidence that SCC commissioned the taking of the photographs and paid for the right to use the photographs. This evidence does not dispute the fact as proffered by plaintiff.

18. SCC has no written license to any of the materials contained on the LINC website.

> In support of this proposed fact, plaintiff cites to the testimony of Carol Meharry wherein she admitted that the

7

license to use the materials was an "implied license" and that she has never seen a written license giving SCC the exclusive right to use the photographs.

Defendant contests this proposed fact in part, citing to evidence that SCC paid Fotographics to take a picture of a store SCC built. The cited evidenced does not establish that defendant paid for the "right to use the photographs", just that it paid to have the picture taken. This evidence does not contradict the proposed fact.

**19.  SCC is a general contractor**, not a professional services firm.

Plaintiff points to testimony of Chad Wood, the Executive Vice President and CFO of SCC, who stated that SCC is a general contractor. However, defendant, who contests this proposed fact, points to Mr. Wood's testimony that he does not know whether SCC is a professional services firm because he does not know the definition of a professional services firm. That portion of the proposed fact remains controverted.

20. LINC Construction Consulting is a professional services firm providing owner representation, not a general contractor.

The evidence cited by both parties conflicts. This proposed fact remains in dispute

8

**21. In 2008 over 90 percent of SCC's revenue was generated from building buildings.**

22. During the time Ms. Holt was employed by SCC, SCC did not perform the services provided by LINC Construction Consulting.

> The evidence cited by both parties conflicts. This proposed fact remains in dispute.

23. SCC has suffered no financial loss or diversion of its client base as a result of Holt's posting of the contents of the LINC website.

> In support of this proposed fact, plaintiff points to "Exhibit E, Carol Meharry Testimony, TRO Hearing Transcript, p. 183, ll. 13-19". However, Exhibit E has only one page, page 28. Plaintiff also cites to the testimony of Chad Wood, Executive Vice President and CFO of Schweiger, wherein he essentially testified that he would not know whether there had been financial loss because he has no way of knowing whom plaintiff is pursuing.

> Because the cited evidence does not establish the proposed fact, this fact remains in dispute.

**24. SCC alleged in its negligence counterclaim that Holt "as officer, employee and director of Schweiger, owed a duty to Schweiger to exercise that level of skill and judgment ordinarily**

9

exercised by similarly situated managers of commercial construction professionals."

25.  SCC, in its negligence counterclaim, contends that it suffered damages and lost profits as a result of various projects Holt managed.

26.  Paragraph 20 of the Shareholder-Employee Agreement entered into between Holt, SCC, Meharry, and Schweiger provides:

(a)  Each person bound by this Agreement (an "indemnitor") shall indemnify, keep indemnified and hold harmless each other person bound by this Agreement (each an "indemnitee") from and against any liability, loss, damage or expense (including reasonable attorneys' fees and expenses of pursuing claims under this indemnity) which may be suffered or incurred by the Indemnitee and which is caused by or arises out of:
    (ii) the failure of the Indemnitor to perform any act or agreement which the Indemnitor is bound by this Agreement to perform. . .

27.  Paragraph 20(c)(ii) of the Shareholder-Employee Agreement defines the term "Liabilities" as it is used in paragraph 20 to mean:  "any asserted or unasserted claim arising out of any illegal, wrongful, tortious, or negligent act or omission".

IV.  *ADDITIONAL UNCONTROVERTED FACTS*

In its response, defendant offered additional uncontroverted facts.  Below, the facts typed in bold are those that I find to be undisputed based on the admissible evidence before me.

10

**1. [Some of the] "client comments" on the LINC website are . . . from clients of Schweiger.**

In support of this proposed fact, defendant cites to the testimony of Carol Meharry. Ms. Meharry testified that three of the individuals or companies in the client comments section were clients of Schweiger, and that one other client in the client comments section was someone with whom Schweiger had "worked extensively." However, the evidence cited does not establish that these four are the only clients listed in the client comments section. Therefore, the proposed fact has been modified to reflect that some client comments were from clients of Schweiger.

**2. The pictures in the website described as "LINC projects" are all construction projects completed by Schweiger Construction Company.**

Plaintiff objects to this proposed fact in part, adding that the projects were completed by Schweiger Construction Company "and Denise Holt, acting as project manager." The addition of this phrase does not dispute the fact as proposed.

**3. LINC's website became operational in June of 2008.**

**4. Denise Holt is the only employee of LINC.**

**5. Holt was the project manager on all of the projects depicted in photographs on the LINC website.**

11

**6.    Fifth & Delaware is a condominium project of Schweiger, which was bid and managed by Denise Holt, as the project manager.**

7.    Because of construction defects attributable to Holt as the project manager, Schweiger was required to pay a settlement of $350,000 for repairs and to perform another $80,000 in costs for remediation of the construction defects.

In support of this proposed fact, defendant cites to the testimony of Carol Meharry, the President of Schweiger, who says she attributed the construction defects to plaintiff.  Plaintiff objects to this proposed fact, citing to her own testimony that the leaking at the project was not the result of a construction defect.  Plaintiff also cites to her own testimony that SCC's architectural expert concluded that the leak was a design problem; however, that is inadmissible hearsay.  Because the admissible evidence cited by each party contradicts the other, this proposed fact remains in dispute.

8.    Schweiger's expert witness, Michael Harris, an architect with extensive construction experience, has examined the Fifth & Delaware project, along with others.  Mr. Harris concluded with respect to Fifth & Delaware that the acts and omissions of Holt caused Schweiger to incur losses in the range of $350,000 to $400,000 to correct construction deficiencies.

12

Defendant's expert supports this statement while plaintiff's expert refutes it. This fact remains controverted.

9. In addition, Mr. Harris found that Ms. Holt was negligent in her performance as a project manager for Fifth & Delaware and that, as a direct result of that negligence, Schweiger sustained damages.

Defendant's expert supports this statement while plaintiff's expert refutes it. This fact remains controverted.

## V. LANHAM ACT CLAIM

Title 15, United States Code, Section 1125(a)(1)(A) prohibits "false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device." American Association of Orthodontists v. Yellow Book USA, Inc., 443 F.3d 1100, 1103-04 (8th Cir. 2006). Section 1125(a)(1)(B) prohibits false advertising. Section 1125(a)(1) reads as follows:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person,

13

> or as to the origin, sponsorship, or approval of
> his or her goods, services, or commercial
> activities by another person, or
>
> (B) in commercial advertising or promotion,
> misrepresents the nature, characteristics,
> qualities, or geographic origin of his or her or
> another person's goods, services, or commercial
> activities,
>
> shall be liable in a civil action by any person who
> believes that he or she is or is likely to be damaged
> by such act.

15 U.S.C. § 1125.

Plaintiff argues that defendant has no standing to bring
this Lanham Act counterclaim because defendant has sustained no
injury in fact, plaintiff is not in commercial competition with
SCC, plaintiff has not engaged in commercial speech, there have
been no false statements about plaintiff's or defendant's
products or services, and plaintiff has a license to use the
photographs at issue.

_Injury in Fact_

Plaintiff argues that defendant has no standing to bring
this Lanham Act claim because defendant can show no injury in
fact and no possibility of injury in fact because plaintiff is
not in commercial competition with defendant.

> [C]ases involving injunctive relief and those seeking
> monetary damages under the Lanham Act have different
> standards of proof. A plaintiff suing to enjoin conduct
> that violates the Lanham Act need not prove specific damage.

Porous Media Corp. v. Pall Corp., 110 F.3d 1329, 1335 (8th Cir.
1997). That court went on to state:

14

A leading commentator demonstrates the fundamental difference in cases dealing with injunctions and those dealing with money damages:

> Since § 43(a) was passed to protect consumers as well as competitors, the courts are not and should not be reluctant to allow a commercial plaintiff to obtain an injunction even where the likelihood of provable impact on the plaintiff may be subtle and slight. Congressional policy appears to encourage commercial firms to act as the fabled "vicarious avenger" of consumer rights. An injunction, as opposed to money damages, is no windfall to the commercial plaintiff. An injunction protects both consumers and the commercial plaintiff from continuing acts of false advertising. Money damages, on the other hand, primarily aid only the competitor, and he is required to satisfy a much higher standard of proof as to injury in order to recover damages.

Id. at 1335, n. 8.

In this case, defendant's counterclaim seeks equitable relief. Therefore, the counterclaim will not be dismissed for an inability to establish specific monetary damages.

*Commercial Competition*

Plaintiff next argues that she is not in commercial competition with defendant. However, plaintiff's factual support for this argument remains in dispute. Therefore, her motion for summary judgment on this basis will be denied.

*Commercial Speech*

Plaintiff next argues that defendant cannot satisfy the threshold requirement of commercial speech under the Lanham Act. The Eighth Circuit has held that commercial speech is a mandatory requirement for Lanham Act liability. Porous Media Corp. v. Pall Corp., 173 F.3d at 1120. In determining whether speech is

15

commercial, courts look at three elements: (1) whether the
communication is an advertisement, (2) whether it refers to a
specific product or service, and (3) whether the speaker has an
economic motivation for the speech. Id.

Plaintiff states that the website is not for commercial
purposes; however, plaintiff offers no other explanation for the
existence of the website. I find that this is a material fact
that remains in dispute.

*False Statements*

Plaintiff argues that the pictures and statements on her
website do not contain false statements about her products or
services or the products and services of defendant. Use of
photographs and images of the work product of another in an
advertisement as representative of the product or service offered
is a per se violation of the Lanham Act. "The use of another's
product, misbranded to appear as that of a competitor, has been
repeatedly found to be 'a false designation of origin' actionable
under § 43(a). The fact that the products are of equal quality is
not of dispositional significance." Truck Equipment Service Co.,
v. Fruehauf Corp., 536 F.2d 1210, 1216 (8th Cir. 1976). It is
undisputed that the pictures in plaintiff's website described as
"LINC projects" are all construction projects completed by
Schweiger Construction Company. Therefore, plaintiff's motion
for summary judgment on this basis will be denied.

16

*Holt's License to Use the Photographs*

Finally, plaintiff argues that defendant has no standing to bring this Lanham Act claim because plaintiff has a license to use the photographs that are on her website. This is irrelevant. The claim against which plaintiff must defend is not a claim brought by the photographer for improper use of copyrighted photographs.

Plaintiff further argues that the Lanham Act does not prohibit former employees from taking credit through visual representations for work done for a previous employer. However, as was discussed more thoroughly in the order on defendant's motion for TRO and Preliminary Injunction, plaintiff's website purports to show work completed by LINC, not work that plaintiff was responsible for while employed elsewhere.

Based on all of the above, I find that plaintiff is not entitled to summary judgment on defendant's Lanham Act counterclaim.

**VI. UNFAIR COMPETITION**

Plaintiff contends that defendant's unfair competition counterclaim is preempted in part by the Copyright Act. The Copyright Act protects creative works from sale or plagiarization. None of defendant's claims are predicated on the notion that it owns the copyright to the photographic images

17

displayed on plaintiff's website.  Therefore, plaintiff's
argument is without merit.

## VII. NEGLIGENCE

Plaintiff argues that defendant's negligence counterclaim
fails as a matter of law because (1) the Shareholder-Employee
Agreement expressly indemnifies plaintiff for any and all
negligent acts or omissions she committed while working for
defendant, (2) Missouri's business judgment rule has been held to
prohibit negligence suits against corporate directors and
officers for acts and decisions made within their authority, and
(3) Missouri does not recognize employer-initiated negligence
suits against employees for lost profits.

### Shareholder-Employee Agreement

Plaintiff argues that the plain language of the shareholder-
employee agreement establishes that defendant "has agreed to
indemnify Holt from and against any liability arising out of her
failure to perform any act which she 'is bound by this agreement
to perform.'"  Plaintiff's argument is without merit.

The shareholder-employee agreement states as follows:

a)    Each person bound by this Agreement (an "indemnitor")
shall indemnify, keep indemnified and hold harmless each
other person bound by this Agreement (each an "indemnitee")
from and against any liability, loss, damage or expense
(including reasonable attorneys' fees and expenses of
pursuing claims under this indemnity) which may be suffered
or incurred by the Indemnitee and which is caused by or
arises out of:

18

>                  (ii) the failure of the Indemnitor to perform any act
>                  or agreement which the Indemnitor is bound by this
>                  Agreement to perform. . .

The agreement provides that the INDEMNITOR will indemnify the indemnitee for the INDEMNITOR'S failure to perform. The person doing the indemnifying and the person who failed to perform are one in the same. Plaintiff argues that the agreement says the person failing to act will be indemnified by someone else. That is a backwards reading of this provision and it makes no sense. This provision of the agreement does not shield plaintiff from liability for negligence.

*Missouri's Business Judgment Rule*

Plaintiff argues that Missouri's Business Judgment Rule insulates her from claims of simple negligence because she was a member of the Board of Directors. Missouri's Business Judgment Rule protects officers and directors of a corporation from liability "for *intra vires* decisions within their authority made in good faith, uninfluenced by any other consideration than the honest belief that the action subserves the best interest of the corporation." Although defendant argues that plaintiff is being sued in her capacity as an employee and not as an officer or director, plaintiff points out that the counterclaim states that, "At all relevant times Holt, *as officer, employee and director* of Schweiger, owed a duty to Schweiger to exercise that level of skill and judgment ordinarily exercised by similarly situated

19

managers of commercial construction professionals." (emphasis added).  However, the factual basis for this claim appears to be actions taken by plaintiff as an employee and not as an officer or director.

Because there remain material disputed facts on the issue of whether plaintiff's alleged conduct was undertaken in her capacity as an employee or as an officer and director, the motion for summary judgment on this basis cannot be granted.

*CAUSE OF ACTION FOR LOST PROFITS*

Plaintiff argues that Missouri does not recognize a cause of action by an employer against an employee for lost profits. Defendant argues that the cause of action is actually "in tort . . . for non-contractual indemnity for losses resulting directly from professional negligent in the performance of her duties as a Project Manager."

As discussed above, whether plaintiff was negligent remains in dispute.  Therefore, summary judgment is not appropriate on this claim.  However, there also remains a question as to whether there is such a cause of action to pursue.

Whether a cause of action exists is a question of law and should have been raised in a timely motion to dismiss.[1]  I have read the briefing on this issue in the summary judgment pleadings

---

[1]This negligence counterclaim was pled on January 22, 2008 - - more than 15 months ago.

20

and find that it is not sufficient for a proper determination. Therefore, further briefing on this legal question will be ordered, and a decision on whether defendant has pled a viable cause of action will be announced prior to the commencement of trial.

## VIII. CONCLUSION

For all of the above reasons, it is

ORDERED that plaintiff's motion for partial summary judgment is denied.  It is further

ORDERED that defendant file a brief providing legal support for the negligence counterclaim by May 13, 2009.  It is further

ORDERED that plaintiff file a response to defendant's brief by May 20, 2009.

_/s/ Robert E. Larsen_
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
May 5, 2009

21